Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------X

DUMBO MOVING & STORAGE INC.,

                    Plaintiff,

              -against-

PIECE OF CAKE MOVING & STORAGE LLC,
SIMPLY MOVING LLC, VOJIN POPOVIC,
and STEFAN MARCALI

                    Defendants.

---------------------------------------------------------------------X

Index No.

**SUMMONS**

Plaintiff designates New York County as the place of trial under CPLR §§ 503(a) and (c). The events giving rise to this action occurred and the Defendant's principal office is located in New York County

To the above-named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or if the Complaint is not served with this Summons, to serve a notice of appearance on the Plaintiffs' attorney within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty [30] days after service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or Answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
       March 23, 2022

                              **OUTSIDE LEGAL COUNSEL LLP**

By:    Yogi Patel, Esq.
        *Attorney for Plaintiff*
        *DUMBO Moving & Storage, Inc.*
        369 Lexington Ave, 3rd Floor
        New York, New York 10017
        yp@outside-legal.com
        (212) 729-4266

        Alan J. Bennett, Esq.
        Alan J. Bennett, PLLC

369 Lexington Avenue, Suite 213
New York, New York 10017
Tel: (212) 696-2116
Fax: (212) 696-2115

TO DEFENDANTS:

Piece of Cake Moving & Storage LLC
287 Park Ave S, Suite 320
New York, NY 10010

Simply Moving LLC
837 Washington Ave, Apt 7H
Bronx, NY 10451

Vojin Popovic
287 Park Ave S, Suite 320
New York, NY 10010

Stefan Marcali
837 Washington Ave, Apt 7H
Bronx, NY 10451

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

DUMBO MOVING & STORAGE INC.,

                Plaintiff,

      -against-


PIECE OF CAKE MOVING & STORAGE LLC,
SIMPLY MOVING LLC, VOJIN POPOVIC,
and STEFAN MARCALI

                Defendants.

-------------------------------------------------------------------X

Index No.:

**VERIFIED**
**COMPLAINT**

Plaintiff Dumbo Moving & Storage Inc., by their undersigned counsel, for their Verified Complaint against Piece of Cake Moving & Storage LLC, Simply Moving LLC, Vojin Popovic, and Stefan Marcali:

## NATURE OF THE ACTION

1. This action arises out of various acts of malfeasance committed by the Defendants that amount to the misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") and New York Common law; unfair competition, unjust enrichment, tortious interference of a contract; and trademark violations.

2. Plaintiff seeks to hold Defendants liable for damages and to secure a permanent injunction prohibiting Defendants from continuing to engage in the tortious conduct alleged herein.

## PARTIES

3. Plaintiff Dumbo Moving & Storage Inc., is a New York Corporation located at 15 N Oxford St, Brooklyn, NY 11205.

4.  Upon information and belief, Defendant Piece of Cake Moving & Storage LLC is a New York Domestic Limited Liability Company located at 287 Park Ave S, Suite 320, New York, NY 10010.

5.  Upon information and belief, Defendant Simply Moving LLC is a New York Domestic Limited Liability Company located at 837 Washington Ave, Apt 7H, Bronx, NY 10451.

6.  Upon information and belief, Defendant Vojin Popovic is an individual and an owner of Defendant Piece of Cake Moving & Storage LLC located at 287 Park Ave S, Suite 320, New York, NY 10010.

7.  Upon information and belief, Defendant Stefan Marcali is an individual and owner of Defendant Simply Moving LLC located at 837 Washington Ave, Apt 7H, Bronx, NY 10451.

## JURISDICTION AND VENUE

8.  Jurisdiction is proper pursuant to Section 301 *et seq.* of the New York Civil Practice Law and Rules ("CPLR").

9.  Venue is proper pursuant to CPLR §§ 503(a) and (c) as the events giving rise to this action occurred in and one of the corporate Defendant's offices are in New York County and the part of the cause of action arises in New York County.

## FACTS COMMON TO ALL CAUSES OF ACTION

10. Plaintiff Dumbo Moving & Storage ("Dumbo" or "Plaintiff") is a Brooklyn based Company that started providing moving and storage services in 2007.

11. Dumbo started its operations with only one (1) vehicle and has now grown to over fifty-five (55) vehicles and employees hundreds of New Yorkers.

12. Dumbo provides moving and storage services all across the tri-state area as well as long distance locations within the United States as well international locations.

13. During the course of this growth, Dumbo invested heavily into technology systems and processes, which is in part what enabled it to scale as efficiently at it has.

14. On or about 2016, Dumbo engaged and paid IT Dev Group to develop an exclusive and proprietary software system ("Exclusive Software") which software was specifically intended to serve as the central management system Dumbo intended to rely on to manage its day-to-day operations.

15. Dumbo collaborated with IT Dev Group in identifying the functionalities it sought and the unique features of the software were customized to Dumbo's specifications.

16. The unique nature of the proprietary Exclusive Software includes paperless, tracking, communication, sales, data, marketing, and analytical capabilities – specifically designed at Dumbo's behest and for Dumbo's exclusive and proprietary use.

17. At the time of engaging IT Dev Group, Dumbo was not able to locate any other software in the marketplace that satisfied its needs.

18. One of the more unique features of the Exclusive Software was its ability to generate the "Guaranteed Price" Dumbo would charge its customers.

19. The ability to generate a "Guaranteed Price" was intended to give Dumbo a competitive advantage in the market place as a customer's decision to select Dumbo over a competitor was in large part driven by the certainty of the price quote.

20. The Exclusive Software was also designed to create an effective communication tool between Dumbo and its Customers as well as Dumbo and its staff.

21. The communication features, including the design elements obviating the need for paper printouts provided to employees and customers was another unique and distinctive feature of the Exclusive Software.

22. The data aggregation features, including the ability to track in real time the status of each move, was also another unique and distinctive feature of the Exclusive Software.

23. The practical impact of the software was that it worked exactly as it was intended to and Dumbo's operation turned more efficient and thus more successful once the Exclusive Software was integrated into its operations.

24. Dumbo did not provide IT Dev Group a license or permission to disseminate the Exclusive Software at any time.

25. Dumbo did not share the Exclusive Software with any third parties and limited access to only authorized Dumbo staff for the purposes of carrying out Dumbo's business operations.

26. Defendants Popovic and Marcali were not authorized to possess or utilize the Exclusive Software at any time during or after engagement by Dumbo and Dumbo undertook measures to keep its Exclusive Software from unauthorized disclosure or use.

27. Upon information and belief, Defendants Popovic and Marcali were aware that the Exclusive Software was considered a proprietary trade secret by Dumbo.

**FIRST CAUSE OF ACTION – MISAPPROPRIATION OF TRADE SECRETS**

MISAPPROPRIATION OF TRADE SECRETS UNDER THE DTSA AND COMMON LAW

28. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-27 above, as fully set forth herein.

29. At the time of the software's development in or about 2016, Plaintiff employed an individual by the name of Volodymyr Plokhykh ("Plokhykh").

Case 1:22-cv-03349-LAP    Document 1-1    Filed 04/25/22    Page 8 of 33

30. Plokhykh's employment with Dumbo commenced in or about 2014 and on his recommendation, Dumbo hired IT Dev Group to develop the Exclusive Software in or about 2016.

31. Unbeknownst to Dumbo, at the time Dumbo engaged IT Dev Group in or about 2016, upon information and belief, Plokhykh had a financial and ownership interest in IT Dev Group.

32. Plokhykh and IT Dev Group failed to disclose this relationship to Dumbo at the time.

33. Plokhykh was promoted to store manager in or about 2017 and was not provided access to Dumbo's proprietary and Exclusive Software in the regular course of his employment nor was he authorized to disseminate Dumbo's Exclusive Software.

34. Unbeknownst to Dumbo, upon information and belief, Plokhykh did have access to the Exclusive Software through IT Dev Group given his undisclosed ownership interest in that Company.

35. Upon information and belief, in or about 2019, Plokhykh without the consent and authorization of Dumbo, gave or sold to Defendant Vojin Popovic ("Popovic") and Defendant Stefan Marcali ("Marcali") Dumbo's Exclusive Software.

36. Defendant Popovic and Defendant Marcali had been engaged as independent contractors by Dumbo since in or about 2013. Defendant Marcali remained engaged by Dumbo as an independent contractor until in or about 2014 and Defendant Popovic remained engaged as an independent contractor by Dumbo until in or about 2018. It was during this time that Defendant Popovic and Defendant Marcali became acquainted with Plokhykh, who remained an employee of Dumbo until on or about 2020.

37. Upon information and belief, upon leaving Dumbo in or about 2014, Defendant Marcali started his own moving and storage company by the name of Simply Moving LLC ("SM").

Case 1:22-cv-03349-LAP   Document 1-1   Filed 04/25/22   Page 9 of 33

38. Upon information and belief, upon leaving Dumbo on or about 2018, Defendant Popovic started his own moving and storage company by the name of Piece of Cake Moving & Storage LLC ("POC").

39. Upon information and belief, in or about 2019, Plokhykh sold or gave Defendant Popovic and Defendant Marcali Dumbo's Exclusive Software, which was used by the Defendants in the day-to-day operations of their respective Companies, without knowledge, consent or a license from Dumbo.

40. Dumbo discovered Defendant's unauthorized dissemination of its Exclusive Software on or about September 2020.

41. Upon information and belief, upon discovering that Plokhykh disseminated Dumbo's Exclusive Software to the Defendants, Plaintiff confronted IT Dev Group and Plokhykh and Plokhykh severed his relationship with both IT Dev Group and Dumbo – but not before the damage of disseminating Dumbo's Exclusive Software was done.

42. Upon information and belief, IT Dev Group claimed that it had not authorized and was unaware that Plokhykh had disseminated Dumbo's Exclusive Software to Defendant Marcali and Popovic – which ultimately led to Plokhykh's ouster from IT Dev Group as well.

43. On or about February 28, 2022, Plaintiff's counsel sent Defendants a cease-and-desist letter ("Cease and Desist Letter") to provide Defendants notice of their unlawful use and misappropriation of the Exclusive Software and to demand they immediate stop doing so. A true and accurate copy of the Cease and Desist letter is attached hereto as **Exhibit A.** Defendants failed to respond to the Plaintiff's letter.

44. Upon information and belief, Dumbo's Exclusive Software remains in use today by Defendants POC and SM, which upon information and belief are entities still owned and operated by Defendant Popovic and Defendant Marcali.

45. Accordingly, Defendants Popovic, and Marcali, used improper means to acquire the Exclusive Software from Plokhykh; knew; or had reason to know that the Exclusive Software was derived through improper means, and without the consent and authorization of Dumbo.

46. Defendants' unauthorized use of Dumbo's Exclusive Software has caused Plaintiff substantial economic damage, the loss of customers, and a loss in competitive advantage.

47. Therefore, Plaintiff is entitled to 1) a seizure order because a temporary injunction or restraining order is too inadequate to prevent further injury and immediate and irreparable injury will continue to occur without it; 2) permanent injunction barring the Defendants from continuing to use Plaintiff's Exclusive Software and prevent trade secret disclosure; 3) monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including compensatory damages; 4) exemplary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court because the misappropriation was willful, malicious, and Plaintiff provided the required notice to the Defendants of their misappropriation; and 5) reasonable attorney fees and costs incurred by the Plaintiff.

## SECOND CAUSE OF ACTION – UNFAIR COMPETITION

48. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-47 above, as fully set forth herein.

49. Defendants Popovic and Marcali, have utilized and continue to utilize Dumbo's Exclusive Software for the benefit of Defendants POC and SM since on or about 2019.

50. POC and SM are direct competitors of Dumbo and provide the exact same services in the same geographic locations as each other.

51. In fact, in or about 2021, Plaintiff received communication from potential customers who shared the offer of a "Guaranteed Price" provided by POC to show the similarities between Dumbo's offer and POC's offer – and ultimately selecting POC over Dumbo on account of this proprietary feature.

52. Upon information and belief, Defendants have intentionally used Dumbo's Exclusive Software to cause Plaintiff substantial economic damage, the loss of customers, and a loss in competitive advantage.

53. Therefore, Plaintiff is entitled to 1) permanent injunction barring the Defendants from continuing to use Plaintiff's Exclusive Software 2) monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including damages in the form of compensatory, punitive, and consequential damages; 3) reasonable attorney's fees and costs associated with this action; and 4) an equitable accounting, which is used to determine and recover disputed monetary amounts;.

### THIRD CAUSE OF ACTION - UNJUST ENRICHMENT

54. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-53 above, as fully set forth herein.

55. Defendants continue to utilize Plaintiff's proprietary and Exclusive Software that was developed exclusively for Plaintiff's exclusive use by IT Dev Group, in 2016, without the Plaintiff's consent.

56. The Exclusive Software was paid for and developed by Plaintiff.

57. The Defendants procured Plaintiff's Exclusive Software through unlawful means.

58. Since on or about 2019, the Defendants have managed to grow their business, in large part by utilizing Dumbo's Exclusive Software, and enriched themselves at Plaintiff's expense.

59. Defendants continued use of Plaintiff's Exclusive Software is against equity and good conscience.

60. Therefore, Plaintiff is entitled to restitution and reasonable attorney fees and costs.

### **FOURTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH CONTRACT**

61. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-60 above, as fully set forth herein.

62. Upon information and belief, Defendants were aware of the existence of the Exclusive Software designed by IT Dev Group for Dumbo's benefit.

63. An agreement between Plaintiff and IT Dev Group remained in place to support the Exclusive Software at all times, including when Defendants Marcali and Popovic misappropriated Plaintiff's Exclusive Software.

64. Upon information and belief, by misappropriating Plaintiff's Exclusive Software, Defendants intentionally induced IT Dev Group to breach its obligation to Dumbo to protect Dumbo's Exclusive Software.

65. Therefore, Plaintiff is entitled to 1) permanent injunction barring the Defendants from continuing to use Plaintiff's Exclusive Software 2) monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including damages in the form of compensatory, punitive, and consequential damages; 3) reasonable attorney's fees and costs associated with this action; and 4) an equitable accounting, which is used to determine and recover disputed monetary amounts;.

## FIFTH CAUSE OF ACTION – TRADEMARK INFRINGEMENT BY POC

66.  Plaintiff repeats and realleges the allegations contained in Paragraphs 1-65 above, as fully set forth herein.

67. Since its inception as a company, Plaintiff has been using the trademark "dumbo®" in connection with the provision of transportation, moving, and storage of goods services.

68. Since February 18, 2014, the dumbo® trademark has been duly registered with the United States Patent and Trade Office ("USPTO") as Registration Number 4483372. A copy of the dumbo® trademark registration is hereto attached as **Exhibit B**.

69. Plaintiff has invested considerable time, energy, and resources into the use and advertisement of the dumbo® trademark and promoting Plaintiff's brand.

70. In fact, Plaintiff's continuous and exclusive use of the trademark for nearly a decade has given the mark an additional, distinctive characteristic, as acknowledged by the USPTO, whereby members of the public have come to associate the dumbo® trademark with Plaintiff's business within the meaning of 15 U.S.C. 1502(f) [the "2(f) Declaration"].

71. The dumbo® trademark registration remains in full force and effect and at all relevant times, Plaintiff has had the exclusive right to use the dumbo® trademark in connection with the provision of transportation, moving, and storage services nation-wide.

72. On or about March 2022, Plaintiff became aware that at least Defendant POC had begun using the dumbo® trademark in advertising the provision of transportation, moving, and storage services on its website ("Infringing Services") in clear violation of Plaintiff's trademark rights. A screenshot from POC's website, https://mypieceofcakemove.com/dumbo-moving, last visited on March 23, 2022, showing at least one example of POC's infringing use of the dumbo® trademark is attached hereto as **Exhibit C**.

73. POC's use of the dumbo® trademark commenced years after Plaintiff's registration was issued by the USPTO and, upon information and belief, was done with the full knowledge of Plaintiff's exclusive right to use the dumbo® trademark.

74. Defendant POC's use of the dumbo® trademark is blatant, egregious, and intentional, as it is, upon information and belief, along with misappropriating the Exclusive Software, part of a design to mimic, imitate, or otherwise copy Plaintiff's business model and operations, as well as pirate the good will Plaintiff has generated through its use of the dumbo® trademark.

75. Defendant POC, upon information and belief, relies heavily on promoting its business through the use of its website. Defendant POC specifically placed Plaintiff's mark as a disguise for a location within Brooklyn where Defendants' allegedly conduct business within.

76. Upon information and belief, POC intended to drive internet searches for Plaintiff's name to its own website in an effort to divert business from the Plaintiff.

77. POC's conduct is willful, intentional, and represents a conscious disregard for Dumbo's rights in the dumbo® trademark, particularly in light of its continued use after having received the Cease and Desist Letter.

78. POC's conduct is likely to cause and, upon information and belief, has caused consumers to believe mistakenly that the services Defendant provides are either affiliated with, endorsed, or authorized by, or somehow connected to Plaintiff.

79. The activities complained of herein have and continue to irreparably harm Plaintiff and dilute the distinctive quality of the dumbo® trademark.

80. Section 32(1)(a) of the Lanham Act, 15 U.S.C. 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant, any trademark or any reproduction, counterfeit, copy, or colorable imitation thereof in connection with the marketing, advertising,

distribution, or sale of goods or services which is likely to result in confusion, mistake, or deception.

81. The dumbo® trademark, at all relevant times, has been federally registered and has acquired a high level of distinctiveness in the mind of the public.

82. POC has used the dumbo® trademark in connection with the Infringing Services without Plaintiff's authorization and consent. Defendants' use, including the advertisement and provision of the Infringing Services, is likely to cause confusion and mistake in the mind of the public, leading the public to believe that POC's services emanate or originate from Plaintiff, or that Plaintiff has approved, sponsored, or otherwise associated itself with POC or their Infringing Services.

83. Through the unauthorized use of the dumbo® trademark, POC is unfairly benefiting from and misappropriating Plaintiff's goodwill and reputation, as well as the fame of the dumbo® trademark. This has resulted in substantial and irreparable injury to the public and to Plaintiff.

84. At all relevant times, POC has had actual and direct knowledge of Plaintiff's prior use and ownership of the dumbo® trademark. POC's conduct is therefore willful and reflects Defendants' intent to exploit the goodwill and strong brand recognition associated with the dumbo® trademark.

85. POC's acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. 1114.

86. POC's acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

87. Therefore, Plaintiff is entitled to 1) permanent injunction barring the Defendants from continuing to use Plaintiff's trademark 2) monetary damages in an amount to be proven at trial

Case 1:22-cv-03349-LAP    Document 1-1    Filed 04/25/22    Page 16 of 33

but believed to be within the jurisdictional requirements of this Court, including damages in

the form of compensatory, punitive, and consequential damages; and 3) reasonable attorney's

fees and costs associated with this action.

### SIXTH CAUSE OF ACTION –TRADEMARK DILUTION BY POC

88.  Plaintiff repeats and realleges the allegations contained in Paragraphs 1-87 above, as fully set

forth herein.

89. Plaintiff is the exclusive owner of the dumbo® trademark.

90. The dumbo® trademark, in addition to being duly registered, has an acquired distinctiveness

within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and has been

distinctive since long before POC began advertising, offering, and/or providing the Infringing

Services. The USPTO found the dumbo® trademark has an acquired distinctiveness as a result

of the geographical scope, the duration, the consumer recognition, and other factors related to

Plaintiff's continuous and exclusive use of the dumbo® trademark.

91. Long after the dumbo® trademark acquired its distinctiveness, POC, without authorization

from Plaintiff, used unauthorized reproductions, counterfeits, copies, and colorable imitations

of the dumbo® trademark. POC's use of the dumbo® trademark dilutes and/or is likely to

dilute the distinctive quality of the dumbo® trademark and to lessen the capacity of such mark

to identify and distinguish Plaintiff's services. POC's unlawful use of the dumbo® trademark

in connection with inferior, Infringing Services is also likely to tarnish that trademark and

cause blurring in the minds of consumers of the distinctiveness of the dumbo® trademark and

its exclusive association with Plaintiff, thereby lessening the value of the dumbo® trademark

as a unique identifier of Plaintiff and its services.

92. At all relevant times, POC had actual and direct knowledge of Plaintiff's prior use and ownership of the dumbo® trademark. POC's conduct is therefore willful and reflects POC's intent to exploit the goodwill and strong brand recognition associated with the dumbo® trademark.

93. By the acts described above, POC has intentionally and willfully diluted, and/or is likely to dilute, the distinctive quality of the distinctive dumbo® trademark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c).

94. POC's wrongful acts will continue unless enjoined by this Court.

95. POC's acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

96. Therefore, Plaintiff is entitled to 1) permanent injunction barring the Defendants from continuing to use Plaintiff's trademark 2) monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including damages in the form of compensatory, punitive, and consequential damages; and 3) reasonable attorney's fees and costs associated with this action.

### SEVENTH CAUSE OF ACTION –
### TRADEMARK DILUTION AND LIKELIHOOD OF INJURY TO BUSINESS
### REPUTATION UNDER SECTION 360-L OF
### NEW YORK GENERAL BUSINESS LAW BY POC

97.  Plaintiff repeats and realleges the allegations contained in Paragraphs 1-96 above, as fully set forth herein.

98. Plaintiff is the exclusive owner of the dumbo® trademark.

99. Through prominent, exclusive, long, and continuous use in commerce, including commerce within New York, the dumbo® trademark has become and continues to be distinctive.

INDEX NO. 152459/2022
RECEIVED NYSCEF: 03/23/2022

100.    Long after the dumbo® trademark became distinctive, POC, without authorization from Plaintiff, advertised and performed transportation, moving, and storage services in express connection with the dumbo® trademark. POC's use of the dumbo® trademark dilutes and/or is likely to dilute the distinctive quality of Plaintiff's mark and lessens the capacity of such mark to identify and distinguish Plaintiff's services. POC's unlawful use of the dumbo® trademark in connection with the Infringing Services is also likely to tarnish that trademark and Plaintiff and cause blurring in the minds of consumers as to the distinctiveness of the dumbo® trademark and its exclusive association with Plaintiff, thereby lessening the value of the dumbo® trademark as unique identifiers of Plaintiff's services.

101.    By the acts described above, POC has diluted the distinctiveness of the dumbo® trademark and caused a likelihood of harm to Plaintiff's business reputation in violation of Section 360-1 of the New York General Business Law.

102.    POC's wrongful acts will continue unless enjoined by this Court.

103.    POC's acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

104.    Therefore, Plaintiff is entitled to 1) permanent injunction barring the Defendants from continuing to use Plaintiff's trademark 2) monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including damages in the form of compensatory, punitive, and consequential damages; and 3) reasonable attorney's fees and costs associated with this action.

## EIGHTH CAUSE OF ACTION –

## COMMON LAW TRADEMARK INFRINGEMENT BY POC

105.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-104 above, as fully set forth herein.

106.     By the acts described above, POC has engaged in trademark infringement in violation of the common law of the State of New York.

107.     POC'S acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

108.     Therefore, Plaintiff is entitled to 1) permanent injunction barring the Defendants from continuing to use Plaintiff's trademark 2) monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including damages in the form of compensatory, punitive, and consequential damages; and 3) reasonable attorney's fees and costs associated with this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

i.     On Plaintiff's FIRST CAUSE OF ACTION for the misappropriation of trade secrets, an order directing:

a.     Declaring Plaintiff the sole and exclusive owners of the Exclusive Software;

b.     Neither POC, SM, or any other person or entity acting on behalf of or in connection with Defendants Popovic, and Marcali will directly or indirectly engage in further unauthorized use of Plaintiff's Exclusive Software;

   c.   Defendants must immediately destroy, discard, delete all unauthorized Exclusive Software that are in their possession, custody, or control;

   d.   Defendants must immediately provide their cooperation in identifying any and all other parties that has Plaintiff's Exclusive Software;

   e.   A seizure order because a temporary injunction or restraining order is too inadequate to prevent further injury and immediate and irreparable injury will continue to occur without it;

   f.   Permanent injunction barring the Defendants from continuing to use Plaintiff's Exclusive Software and prevent trade secret disclosure;

   g.   Monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including compensatory damages; and

   h.   exemplary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court.

ii.   On Plaintiff's SECOND CAUSE OF ACTION for unfair competition, an order directing:

   a.   A permanent injunction barring the Defendants from continuing to use Plaintiff's Exclusive Software

   b.   Defendant pay monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including

damages, in the form of compensatory, punitive, and consequential damages;

c.  Defendant pay reasonable attorney's fees and costs associated with this action;

d.  Equitable accounting, which is used to determine and recover disputed monetary amounts;

iii.  On Plaintiff's THIRD CAUSE OF ACTION for unjust enrichment, an order directing:

a.  A permanent injunction barring the Defendants from continuing to use Plaintiff's Exclusive Software

b.  Defendant pay monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including damages, in the form of compensatory, punitive, and consequential damages;

c.  Defendant pay reasonable attorney's fees and costs associated with this action;

d.  Equitable accounting, which is used to determine and recover disputed monetary amounts;

iv.  On Plaintiff's FOURTH CAUSE OF ACTION for Tortious Interference with a Contract, an order directing:

    a.  A permanent injunction barring the Defendants from continuing to use Plaintiff's Exclusive Software

    b.  Defendant pay monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including damages, in the form of compensatory, punitive, and consequential damages;

    c.  Defendant pay reasonable attorney's fees and costs associated with this action;

    d.  Equitable accounting, which is used to determine and recover disputed monetary amounts;

v.  On Plaintiff's FIFTH, SIXTH, SEVENTH, AND EIGHT CAUSES OF ACTION, an order directing:

    a.  POC to pay monetary damages in an amount to be proven at trial but believed to be within the jurisdictional requirements of this Court, including compensatory damages;

    b.  Issuing and injunction enjoining and restraining POC and the other Defendants from: i) using the dumbo® trademark in connection with the Infringing Services or any other services for which Plaintiff has the exclusive right to use the dumbo® trademark, ii) engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure the Plaintiff's business reputation or dilute the distinctive quality of the

dumbo® trademark, including through the continued provision of the Infringing Services, iii) using the dumbo® trademark or any reproduction thereof in connection with the advertisement, display, or offer of Infringing Services; iv) making any statement or representation whatsoever which can or is likely to lead the trade or public or individual members thereof to believe that any services offered or provided by Defendants are in any manner associated or connected with Plaintiff; v) destroying, altering, removing, or otherwise dealing with any books or records which contain any information relating to the provision of the Infringing Services or the marketing or advertising of same; and vi) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for circumventing the prohibitions set forth herein;

c.  For an assessment of: (i) damages suffered by Plaintiff, trebled, pursuant to 15 U.S.C. 1117(b); or, in the alternative, all illicit profits that Defendants derived while using the dumbo® trademark in connection with the provision of the Infringing Service); or, in the alternative, statutory damages, awarded to Plaintiff pursuant to 15 U.S.C. 1117(c), of up to $2,000,000 for each trademark that Defendants have counterfeited and/or infringed, as well as attorneys' fees and costs; and (ii) an award of Plaintiff's costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. 1117; and

d.  Defendants to pay profits, damages, and fees, to the full extent available, pursuant to Section 360-l of the New York General Business Law; and

e.  Defendants to pay punitive damages to the full extent available under the
law;

vi.  Plaintiff's reasonable attorney's fees and costs associated with this action; and

vii.  Such other and further relief as this Court shall deem just and proper.

Dated: New York, New York
March 23, 2022

**OUTSIDE LEGAL COUNSEL LLP**

By:    Yogi Patel, Esq.
Kyle Carraro, Esq.
*Attorney for Plaintiff*
*DUMBO Moving and Storage, Inc.*
369 Lexington Ave, 3rd Floor
New York, New York 10017
yp@outside-legal.com
(212) 729-4266

Alan J. Bennett, Esq.
Alan J. Bennett, PLLC
369 Lexington Avenue, Suite 213
New York, New York 10017
Tel: (212) 696-2116
Fax: (212) 696-2115

## ATTORNEY VERIFICATION

I, the undersigned, an attorney admitted to practice in the Courts of the State of New York, state that I am the attorney of record for the Plaintiff in the within action; that I have read the foregoing Complaint and know its contents; that it is true to my knowledge, except as to matters alleged to be on information and belief, and as to those matters I believe them to be true.

The reason that this verification is made by me and not by the Plaintiff is because the Plaintiff is not located in the county in which your affirmant maintains his office.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows: records contained in the file maintained in our Office and conversations had with the Plaintiff.

I affirm that the foregoing statements are true, under the penalties of perjury.

Dated: March 23, 2022
New York, New York

By:     Yogi Patel, Esq.
        *Attorney for Plaintiff*
        *DUMBO Moving and Storage, Inc.*
        369 Lexington Ave, 3rd Floor
        New York, New York 10017
        yp@outside-legal.com
        (212) 729-4266

Case 1:22-cv-03349-LAP    Document 1-1    Filed 04/25/22    Page 26 of 33

**EXHIBIT A**



**OUTSIDE LEGAL
COUNSEL LLP**
SERVING BUSINESSES AND EXECUTIVES

YOGI PATEL, ESQ.
yp@outside-legal.com

February 28, 2022

**VIA EMAIL & PRIORITY MAIL**

Best Movers
2937 PA-611
Stroudsburg, PA 18360

Piece of Cake Moving & Storage LLC
287 Park Ave S, Suite 320
New York, NY 10010

Simply Moving LLC
837 Washington Ave, Apt 7H
Bronx, NY 10451

**Re:** ***Cease and Desist – Improper Use and Access of Confidential and
Proprietary Software***

Dear Messrs Plokhykh, Popovic and Marcali:

This firm is legal counsel to Dumbo Moving & Storage Inc., ("Dumbo" or the
"Company"). Be advised it has come to our client's attention that Best Movers ("BM"),
Piece of Cake Moving & Storage LLC ("POC") and Simply Moving LLC ("Simply Moving")
have been inappropriately accessing and utilizing Dumbo's proprietary and confidential
software for competitive business purposes. We are writing to you directly now to provide
you an opportunity to cease and desist from this activity prior to resorting to initiating legal
proceedings against you individually and your business entities.

Specifically, our client has incontrovertible evidence that Mr. Volodymyr Plokhykh
provided Mr. Vojin (Voyo) Popovic and Mr. Stefan Marcali with Dumbo's exclusive
proprietary booking and management software, without Dumbo's authorization or consent,
which software system remains in use today by entities (POC and Simply Moving) owned
and operated by Mr. Popovic and Mr. Marcali. This exclusive software system was
developed for Dumbo by IT Dev Group in 2016. It is our understanding that in 2019, Mr.
Plokhykh, while an employee of Dumbo and a partner in IT Dev Group, shared this
confidential and proprietary software with Mr. Popovic and Mr. Marcali, (also former
employees of Dumbo), who then proceeded to utilize this software for the benefit of POC
and Simply Moving. The unique nature of the proprietary software includes paperless,
tracking, communication, sales, data, marketing and analytical capabilities. The software was
paid for and developed by Dumbo and Mr. Plokhykh's unauthorized dissemination has
caused substantial economic damage to Dumbo. The evidence our office has gathered

INDEX NO. 152459/2022

Case 1:22-cv-03349-LAP    Document 1-1    Filed 04/25/22    Page 28 of 33

RECEIVED NYSCEF: 03/23/2022

Messrs Plokhykh, Popovic and Marcali
February 28, 2022
Page 2 of 2

shows the repeated use of this unique software by POC and Simply Moving spanning several years. The evidence provided to our office by the software developer (IT Dev Group) further corroborates the unlawful appropriation, dissemination and use of Dumbo's intellectual property by all parties.

Therefore, it is hereby demanded that you all immediately cease and desist from: (1) utilizing Dumbo's exclusive proprietary software. It is further demanded that you (2) immediately agree in writing that neither Best Movers, POC and Simply Moving, nor any other person or entity acting on behalf of or in connection with Mr. Plokhykh, Mr. Popovic and Mr. Marcali will directly or indirectly engage in further unauthorized use of Dumbo's intellectual property; and (3) immediately destroy, discard, delete all unauthorized software that are in your possession, custody, or control; and (4) immediately provide your cooperation to identify any and all parties that have Dumbo's intellectual property.

Should you fail to fully comply and respond to these demands by **March 15, 2022,** our client is prepared to take any and all necessary actions to protect its rights and interests, including filing claims in a court of appropriate jurisdiction and seeking an injunction against your further use of its proprietary and confidential information. The causes of action may include, but are not limited to violations of the Computer Fraud and Abuse Act, the Defend Trade Secrets Act (DTSA), which provides for injunctive relief to prevent actual or threatened misappropriation, *ex parte* seizure of property to prevent the disclosure or dissemination of trade secrets, and money damages (including double damages and attorney's fees) as well as causes of action under state law (breach of duty of loyalty) and against all individuals for tort claims.

Finally, if you do not have legal counsel, we advise you to obtain one and provide them with a copy of this letter so that you understand the full implications of our assertions. This letter does not purport to be a full statement of our client's position with respect to this matter, and is written without prejudice to any of the rights or remedies of our client, all of which are hereby expressly reserved.

Sincerely,

Yogi Patel

CC:    IT Dev Group
       Attn: Ivgene didenko
       7118 Bergen Ct,
       Brooklyn, NY 11234

**OUTSIDE LEGAL COUNSEL LLP**

369 Lexington Ave., 3rd Floor • New York, NY 10017  |  Phone: 212.729.4266  |  Fax: 212.729.4299  |  outside-legal.com  |  info@outside-legal.com

**EXHIBIT B**

FILED: NEW YORK COUNTY CLERK 03/23/2022 11:42 AM
INDEX NO. 152459/2022

Trademark Electronic Search System (TESS)
NYSCEF DOC. NO. 1

Case 1:22-cv-03349-LAP    Document 1-1    Filed 04/25/22    Page 30 of 33

RECEIVED NYSCEF: 03/23/2022 3:18 AM



United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Wed Mar 23 04:07:24 EDT 2022*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [        ]  OR  Jump  to record: [        ]  **Record 14 out of 19**

---

TSDR    ASSIGN Status    TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# dumbo

| | |
|---|---|
| **Word Mark** | **DUMBO** |
| **Goods and Services** | IC 039. US 100 105. G & S: Transportation, moving, and storage of goods. FIRST USE: 20030420. FIRST USE IN COMMERCE: 20030420 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85655026 |
| **Filing Date** | June 19, 2012 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 27, 2013 |
| **Registration Number** | 4483372 |
| **Registration Date** | February 18, 2014 |
| **Owner** | (REGISTRANT) Dumbo Moving and Storage Inc CORPORATION NEW YORK 15 North Oxford Street Brooklyn NEW YORK 11205 |
| **Attorney of Record** | Kyle C. Carraro |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL-2(F) |

**Affidavit Text**  SECT 8 (6-YR).

**Live/Dead Indicator**  **LIVE**

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST

FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Case 1:22-cv-03349-LAP    Document 1-1    Filed 04/25/22    Page 32 of 33

**EXHIBIT C**

